**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**KENNETH EUGENE SPEIGHT,**

                       **Plaintiff,**

             v.                                    **5:05-CV-542**
                                                **(FJS/GHL)**

**CRAIG A. BENEDICT, individually;**
**STEPHEN F. WEISHAUPT, individually;**
**MICHAEL DWYER, individually; MICHAEL**
**J. CROSS, individually; and HEATHER**
**R. EPSTEIN, individually,**

                       **Defendants.**
_____

**APPEARANCES**                                     **OF COUNSEL**

**KENNETH EUGENE SPEIGHT**
**12471-014**
USP McKean
P.O. Box 8000
Bradford, Pennsylvania 16701
Plaintiff *pro se*

**OFFICE OF THE UNITED**                     **WILLIAM F. LARKIN, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On May 4, 2005, Plaintiff filed his forty-page complaint against Defendants pursuant to

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* In

substance, Plaintiff alleges that Defendants engaged in a pattern of criminal conduct, the object of which was to acquire control of the United States District Court for the Northern District of New York.

On October 14, 2005, Defendants moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915A. In support of their motion, Defendants assert that (1) Plaintiff's complaint fails to state a civil RICO claim, (2) the doctrines of absolute and qualified immunity protect them from Plaintiff's claims, (3) the doctrines of res judicata and/or collateral estoppel bar Plaintiff's complaint, and (4) the Court should have dismissed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Plaintiff opposes this motion.

In addition, on October 28, 2005, Plaintiff filed a motion for voluntary dismissal of Defendant Heather Epstein; and on February 13, 2006, Plaintiff filed a motion to preserve evidence. Defendants oppose the latter motion.

The following constitutes the Court's determination of these three pending motions.

## II. BACKGROUND

### A. Prior proceedings

On June 17, 1997, Plaintiff was convicted in the District of Connecticut for federal firearms violations. While incarcerated at the Federal Correctional Institution at Ray Brook, New York ("FCI Ray Brook"), as a result of that conviction, he was indicted in this District for conspiracy to commit mail fraud in violation of 18 U.S.C. § 371; conspiracy to injure officers of the United States in violation of 18 U.S.C. § 372, and three counts of mail fraud in violation of

18 U.S.C. § 1341.  *See* Case No. 5:01-CR-102, at Dkt. No. 26, Second Superseding Indictment. The Indictment charged that Plaintiff mailed false and fraudulent liens to the Connecticut Secretary of State in an effort to obtain money from various Connecticut federal judges and prosecutors and to keep such individuals from freely controlling their own funds.  Included within the underlying conduct for which Plaintiff was convicted were two documents that he prepared: one entitled "Notice of Default against Michael Cross for Thirty Million Dollars ($30,000,000)" and another entitled "Actual and Constructive Notice against Heather Epstein for One Billion, Twelve Million Dollars ($1,012,000,000.00)."

On February 6, 2002, a jury convicted Plaintiff of all five counts of the Indictment. Subsequently, on June 3, 2002, judgment was entered against him, sentencing him to a term of imprisonment of 72 months.  Plaintiff appealed his conviction to the United States Court of Appeals for the Second Circuit, which affirmed his conviction.

**B.      Plaintiff's pending action pursuant to 18 U.S.C. § 1962**

In his complaint, Plaintiff asserts that Defendants engaged in a pattern of criminal conduct, including extortion, bribery, perjury, subornation of perjury, obstruction of justice, and fraud, to acquire control of the affairs of the United States District Court for the Northern District of New York ("this Court").  *See* Complaint at ¶ 9.  Furthermore, Plaintiff alleges that Defendants, during the performance of their official duties, engaged in activities affecting interstate commerce, *see id.* at ¶ 10, to coerce him to remove a lien and to deceive him into believing that his conduct had been unlawful, *see id.* at ¶ 11.  Plaintiff also contends that Defendants intended to cause him losses in the tens of millions of dollars and to deprive him of

his liberty for up to twenty years. *See id.* Based upon these allegations, Plaintiff asserts four causes of action.

In the first cause of action, he asserts that Defendants acquired control of this Court through a pattern of racketeering activity. More specifically, he alleges that Defendants Cross and Weishaupt executed a scheme of extortion, that Defendant Cross ordered him seized from the general population and placed in the Special Housing Unit ("SHU"), and that Defendant Weishaupt attempted to interview him while he was at the SHU. *See* Complaint at ¶¶ 27-28. Furthermore, Plaintiff asserts that Defendants Cross, Weishaupt, and Benedict executed a scheme involving multiple acts of extortion through the fabrication of false facts and witnesses. *See id.* at ¶ 29a. Additionally, Plaintiff claims that Defendants Benedict, Epstein, Weishaupt, and Dwyer executed a scheme to defraud by means of false and fraudulent pretenses to cause him financial loss and economic injury. *See id.* at ¶ 30. In furtherance of this scheme, Plaintiff claims that Defendant Epstein filed an action in the United States District Court for the District of Connecticut seeking to remove the liens that Plaintiff had filed. *See id.* at ¶ 30a. In addition, Plaintiff asserts that Defendants Benedict and Dwyer executed a corrupt scheme to influence the findings of two federal grand juries through acts of perjury, *see id.* at ¶ 31, and that Plaintiff suffered injury to his business and property as a result of Defendants' racketeering acts, *see id.* at ¶ 32.

In the second cause of action, Plaintiff alleges that Defendants directly conducted or participated in the affairs of this Court through a pattern of racketeering activity by misusing the legal process to extort and defraud him. *See id.* at ¶ 35.

In the third cause of action, Plaintiff contends that Defendants conspired to acquire

control of the affairs of this Court through a pattern of racketeering activity by agreeing to engage in a course of conduct involving multiple acts of extortion, mail fraud, wire fraud, and perjury.

In the fourth cause of action, Plaintiff asserts that Defendants conspired to participate in or control the affairs of this Court through a pattern of racketeering activity by agreeing to engage in a course of action that would result in some or all of them committing perjury, subornation of perjury, mail fraud, bribery, witness tampering, and obstruction of justice, with the intent to participate in the affairs of this Court.

Finally, in his civil RICO statement, which he filed in support of his complaint, *see* Dkt. No. 7, Plaintiff alleges that the victims of Defendants' unlawful activity are the enterprise (this Court), two separate grand juries, a trial jury, and him.

### III. DISCUSSION

**A.  Standard of review**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "'the court must accept the material facts alleged in the complaint as true' and afford the non-moving party all favorable inferences therefrom.'" *Beattie v. Farnsworth Middle Sch.,* 143 F. Supp. 2d 220, 226 (N.D.N.Y. 1998) (quoting *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995)) (other citation omitted).  "A motion to dismiss should only be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harris v. McGinnis,* No. 02 Civ. 6481, 2004 WL 2187137, *2 (S.D.N.Y. Sept. 30, 2004) (quotation and other citation omitted).  Moreover, "the Court must limit its analysis to the four corners of the complaint'" when deciding the motion.

*Chase v. Czajka*, No. 04 Civ. 8228, 2005 WL 668535, *4 (S.D.N.Y. Mar. 23, 2005) (quoting *Vassilatos v. Ceram Tech Int'l Ltd.,* 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993)) (footnote omitted). However, the Court may also consider "documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.* 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).

**B.     Plaintiff's RICO claims**

"To establish a RICO claim, a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quotation omitted). Furthermore, § 1962(c) provide, in pertinent part, that it is unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c).

Thus, "[t]o establish a violation of . . . § 1962(c), . . . a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco*, 244 F.3d at 306 (quotation and other citations omitted). Moreover, a plaintiff must establish the requirements of § 1962(c) with respect to each defendant. *See id.* (citation omitted).

For purposes of the RICO statute, "an enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" encompasses a wide variety of state and federal offenses, including murder, kidnaping, gambling, arson, robbery, bribery, and extortion. *See* 18 U.S.C. § 1961(1). A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "In short, to establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *DeFalco*, 244 F.3d at 306 (citations omitted).

Keeping these principles in mind, the Court will address Plaintiff's allegations regarding each of the elements of his RICO claims.

### 1. The United States District Court for the Northern District of New York as an enterprise

"'[I]t is well established in this Circuit that, under § 1962(c), the alleged RICO "person" and RICO "enterprise" must be distinct.'" *DeFalco*, 244 F.3d at 307 (quotation omitted). As the court explained in *DeFalco*, "'[t]his requirement focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity.'" *Id.* (quotation omitted). Moreover, the Second Circuit has held that "a governmental unit can be a RICO enterprise." *Id.* at 307-08 (citing *United States v. Angelilli*, 660 F.2d 23, 30-35 (2d Cir. 1981), *cert. denied*, 455 U.S. 910, 945, 102 S. Ct. 1258, 1442, 71 L. Ed. 2d 449, 657

(1982)).[1]

Plaintiff alleges that this Court is an "enterprise" within the meaning of the RICO statute. Since the Second Circuit has clearly stated that a governmental unit can be a RICO enterprise and because this Court is indisputably a "governmental unit," the Court cannot find that there is no set of facts upon which Plaintiff could rely to demonstrate that this Court is an "enterprise" for RICO purposes.

### 2. *Interstate commerce*

Defendants argue that Plaintiff "offers no proof that the activities of the enterprise, the United States District Court for the Northern District of New York, or the activities of the defendants, had a **material impact** on interstate commerce." *See* Defendants' Memorandum of Law at 13-14 (emphasis added). However, as the court noted in *DeFalco*, the impact on interstate commerce must only be "minimal." *See DeFalco*, 244 F.3d at 309 (citation omitted). There can be little doubt that the regular business of this Court, at least minimally, affects interstate commerce. Therefore, the Court concludes that it cannot find, as a matter of law, that there is no set of facts upon which Plaintiff can rely to support this element of his RICO claims.

### 3. *Participation in the conduct of the District Court's affairs*

"The Supreme Court has interpreted the phrase 'to participate . . . in the conduct of [the] enterprise's affairs' to mean participation in the operation or management of the enterprise."

---

[1] In *Angelilli*, the court concluded that the New York City Civil Court was an enterprise for purposes of RICO. *See United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir. 1991).

*DeFalco*, 244 F.3d at 309 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993)). More specifically, "[t]he Court held that, to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs, 'one must have some part in directing those affairs.'" *DeFalco*, 244 F.3d at 309 (quotation omitted). The Court explained further that "'the word "participate" makes clear that RICO liability is not limited to those with primary responsibility, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise. . . .'" *Id.* (quotation omitted).

Clearly, Defendants are not employees of the Court. However, Plaintiff alleges that "as an officer of the Court," Defendant Benedict "exercised management capacity involving direction of the court's adjudicative function." *See* Plaintiff's Memorandum of Law at 4. With respect to Defendants Dwyer and Epstein, Plaintiff urges that they played some part in directing the Court's affairs. *See id.* at 5. Specifically, he alleges that Defendant Dwyer's "evidence tampering-fabrication, and false testimony, played some part to direct, control or influence the fact-finding function of the court." *See id.* He also asserts that Defendant Epstein "played a similar role." *See id.* Finally, with respect to Defendants Weishaupt and Cross, he contends that they "were responsible for 'carrying out instructions' of the conspiracy's principal [Benedict] which amounted to indirect participation where their witness-tampering and bribery were in furtherance of Benedict's direction, control and influence of the fact-finding function of the court." *See id.*

These allegations, even if true, are insufficient to show that any of the Defendants participated, either directly or indirectly, in the operation of the affairs of this Court. Although Defendants were involved, in some manner, in the investigation and prosecution of Plaintiff in this Court, the Court finds that such activities do not amount to directing the affairs of this Court,

either directly or indirectly. To hold otherwise would mean that all litigants, attorneys, and witnesses, simply by virtue of their participation, however minimal, in a pending action in this Court, would in some manner direct the operation of this Court's affairs; this is simply not the case. Therefore, the Court finds that, as a matter of law, there is no set of facts upon which Plaintiff could rely to show that Defendants participated, either directly or indirectly, in the operation or management of this Court's affairs within the meaning of the RICO statute.

### *4. Pattern of racketeering activity*

"To establish a pattern [of racketeering activity], a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *DeFalco*, 244 F.3d at 320 (quotation and other citation omitted). "The continuity necessary to prove a pattern can be either 'closed-ended continuity,' or 'open-ended continuity.'" *Id.* (citing *H.J., Inc.*, 492 U.S. at 239, 241, 109 S. Ct. 2893).

Even if the Court assumes that Plaintiff's allegations are sufficient to demonstrate the requisite number and quality of predicate acts on the part of one or more of the Defendants, Plaintiff's allegations are insufficient to show a pattern of racketeering activity.

#### *a. Closed-ended continuity*

"Closed-ended continuity is demonstrated by predicate acts that 'amount to continued criminal activity' by a particular defendant." *DeFalco*, 244 F.3d at 321. To demonstrate close-ended continuity, a "plaintiff must prove 'a series of related predicates extending over a

substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy this requirement.'" *Id.* (quotation omitted). In other words, to show closed-ended continuity, "'a plaintiff must provide some basis for a court to conclude that defendants' activities were "neither isolated or sporadic."'" *Id.* (quotation omitted). Moreover, as the court pointed out in *DeFalco*, "[s]ince the Supreme Court decided *H.J., Inc.* [in 1989], this Court has never held a period of less than two years to constitute a 'substantial period of time.'" *Id.* (citations omitted). Finally, "although closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Id.* (citations omitted).

Defendants assert that the first predicate act that Plaintiff alleges occurred on August 22, 2000, and the last act occurred during his trial, which ended on February 6, 2002, when he was convicted of conspiracy to commit mail fraud, conspiracy to injure officers of the United States and three counts of mail fraud. *See* Defendants' Memorandum of Law at 18-19. Therefore, Defendants argue that "[P]laintiff fails to meet the time period necessary to establish a 'closed-ended' pattern of racketeering activity." *See id.* at 19. Plaintiff offers nothing to rebut this argument.

Accordingly, in light of the well-established law in this Circuit, the Court concludes that there is no set of facts upon which Plaintiff could rely to demonstrate that there exists a pattern of racketeering activity under the theory of closed-ended continuity.

### *b. Open-ended continuity*

To demonstrate open-ended continuity, "'the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed.'" *DeFalco*, 244 F.3d at 323 (quotation omitted). In the Second Circuit, "the 'cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed.'" *Id.* (quoting *GICC Capital Corp.*, 67 F.3d at 466). To assess whether a plaintiff has established open-ended continuity, "the nature of the RICO enterprise and of the predicate acts are relevant." *Id.* (citations omitted). "Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity." *Id.* (citations omitted). On the other hand, "'where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were in the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.'" *Id.* (quotation and other citation omitted).

Defendants argue that Plaintiff's allegations against them for extortion, wire fraud, and/or mail fraud ceased with his conviction on February 6, 2002. Thus, they contend that there is no threat of continuing criminal activity beyond this time. *See* Defendants' Memorandum of Law at 18. To the contrary, Plaintiff argues that "it is clearly evident that the predicate acts became the Defendants' regular way of operating the court functions to achieve their goal. It is equally evident from the nature of the predicate acts that a threat exists for repetition of such activity."

*See* Plaintiffs' Memorandum of Law at 13.

All of Plaintiff's allegations against Defendants, including those sounding in extortion, wire fraud, mail fraud, perjury and subornation of perjury, concern their actions leading to his prosecution and conviction on February 6, 2002, for conspiracy to commit mail fraud, conspiracy to injure officers of the United States, and mail fraud.[2] Moreover, on appeal, the Second Circuit affirmed Plaintiff's conviction, and this Court (Hurd, J.) denied his petition for a writ of habeas corpus. Therefore, the Court finds that, even accepting the allegations in Plaintiff's complaint as true and drawing all reasonable inferences in his favor, Plaintiff has failed to allege any facts that would support a finding that there exists a threat of continuing criminal activity.

### III. CONCLUSION

After having carefully reviewed Plaintiff's complaint, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to preserve evidence is **DENIED AS MOOT**; and the Court further

---

[2] The Court also notes that suborning perjury, perjury, filing a court action, filing a false affidavit, and giving false testimony do not constitute predicate acts within the meaning of the RICO statute.

**ORDERS** that Plaintiff's motion for a voluntary dismissal without prejudice of his claims against Defendant Heather R. Epstein is **DENIED AS MOOT**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 28, 2007
       Syracuse, New York

                                    Frederick J. Scullin, Jr.
                                    Senior United States District Court Judge